Jordan Susman, Esq. (SBN 246116)
jsusman@nolanheimann.com
Margo Arnold, Esq. (SBN 278288)
marnold@nolanheimann.com
NOLAN HEIMANN LLP
16133 Ventura Boulevard, Suite 820
Encino, California 91436
Telephone: (818) 574-5710
Fax: (818) 574-5689


Attorneys for Plaintiff
Prime Alliance Bank, Inc.

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRIME ALLIANCE BANK, INC., a Utah corporation,<br><br>    Plaintiff<br><br>    vs.<br><br>EAGLE EYE PRODUCE CALIFORNIA, INC., an Idaho Corporation; EAGLE EYE PRODUCE, INC., an Idaho Corporation; DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No.:<br><br>**COMPLAINT FOR**<br><br>**(1)    CONVERSION**<br><br>**(2)    DECLARATORY RELIEF**<br><br>**(3)    UNJUST ENRICHMENT**<br><br>**DEMAND FOR JURY TRIAL** |

1

Plaintiff Prime Alliance Bank, Inc. ("**Prime Alliance**") hereby allege as follows:

## THE PARTIES

1.     Plaintiff Prime Alliance is a Utah corporation with its principal place of business in Davis County, Utah.

2.     Prime Alliance alleges on information and belief that Defendant Eagle Eye Produce California, Inc. is an Idaho corporation with its principal place of business located in Riverside County, California.

3.     Prime Alliance alleges on information and belief that Defendant Eagle Eye Produce, Inc. is an Idaho corporation with its principal place of business located in Bonneville County, Idaho. (Eagle Eye Produce California, Inc. and Eagle Eye Produce, Inc. are referred to collectively herein as "**Eagle Eye**.")

4.     Prime Alliance is unaware of the true names and capacities of defendants, whether individual, corporate, associate, or otherwise, named herein as Does 1 through 10, inclusive, and therefore sues said defendants by such fictitious names (the "**Doe Defendants**").  Prime Alliance will seek leave to amend this Complaint to state their true names and capacities when they are ascertained. (All of the Defendants, including the Doe Defendants, collectively are referred to herein as "Defendants.")

5.     Prime Alliance is informed and believes and based thereon alleges that Defendants at all times relative to this action, were the agents, servants, partners, joint venturers and employees of each of the other Defendants and, in doing the acts alleged herein, were acting with the knowledge and consent of each of the other Defendants in this action.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a).

7.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district.  In particular, the converted property was stolen by Defendants from a

location in San Joaquin, California.

## FACTS COMMON TO ALL CAUSES OF ACTION

### Prime Alliance Comes into Possession of the Equipment

8.      Non-party Quality Fresh Farm, Inc. ("**QFF**") as lessee, and Prime Alliance, successor in interest to Leasing Innovations Incorporated ("**LII**") as lessor, were parties to a certain Lease Agreement No. HGF034818, with all accompanying documents and agreements (the "**Lease**").   A copy of the Lease is attached hereto as **Exhibit 1** and incorporated herein by this reference.

9.      Prime Alliance became the successor in interest of LII pursuant to that certain Limited Recourse Assignment between Prime Alliance and LII, wherein LII sold, assigned and delivered to Prime Alliance, all of LII's proportionate right, title and interest in and to the Lease (the "**Assignment**"), a copy of which is attached hereto as **Exhibit 2** and incorporated herein by this reference.

10.     The property leased to QFF under the lease comprised a watermelon packing line with a contract purchase price of One Million Sixty-Four Thousand Two Hundred Thirty-One and 00/100 Dollars ($1,064,231.00) ("the **Equipment**").

11.      The Equipment is more particularly described in Schedule A to that certain Certificate of Delivery and Acceptance associated with the Lease (the "**Certificate of Acceptance**"), a copy of which is attached hereto as **Exhibit 3** and incorporated herein by this reference.

12.     Pursuant to the Assignment, LII also assigned to Prime Alliance its proportionate rights in a security interest in the Equipment and the payments and proceeds therefrom.

13.     The proportionate interest LII assigned to Prime Alliance was Seventy-Five percent (75%), comprising specific pieces of equipment identified as pages 2 of 3 and 3 of 3 of Schedule A attached to the Certificate of Acceptance (the "**Prime Alliance Equipment**").

14.     Prime Alliance's security interest in the Prime Alliance Equipment is evidenced by: (1) that certain UCC Financing Statement Amendment filed on April 20, 2018 with the California Secretary of State on April 20, 2018 as entry number 1876447793; (2) that certain UCC Financing Statement Amendment (fixture) filed on April 20, 2018 with the California Secretary of State on April 20, 2018 as entry number 1876447795; and (3) that certain UCC Financing Statement Amendment (fixture) filed in the real estate records of Fresno County as entry number 2018004694 (collectively "**UCC Amendments**").  Copies of the UCC Amendments are attached hereto as **Exhibit 4** and incorporated herein by this reference.

15.     LII retained a security interest in the remaining twenty-five percent (25%) of the Equipment, comprising specific pieces of equipment identified as page 1 of 3 of Schedule A attached to the Certificate of Acceptance (the "**LII Equipment**").

16.     The Prime Alliance Equipment was capable of operating as a stand-alone line, while the LII Equipment was not, and could not be used without the Prime Alliance Equipment.

17.     As a result of QFF's defaults under the Lease, Prime Alliance became entitled to exercise its rights as both a lessor and secured creditor.

18.     QFF filed for bankruptcy relief in the Eastern District of California on January 4, 2019 ("**Bankruptcy**").  During the Bankruptcy, the automatic stay was lifted as to the Equipment, allowing Prime Alliance and LII to proceed with repossessing, marketing and selling their respective portions of the Equipment.

**Prime Alliance Puts Up the Equipment For Sale**

19.     Following the lift of the automatic stay, Prime Alliance began marketing the Equipment in an effort to find a buyer.

20.     Prime Alliance was advised to keep the Equipment in place while marketing efforts were ongoing, as potential buyers would be more likely in buying the Equipment if the Equipment was functioning.

21.     LII also began marketing the LII Equipment and sometime during September of 2019, LII contracted with an online equipment auction house, Iron Planet, to list the equipment on the auction site ironplanet.com in an attempt to sell the LII Equipment (the "**Auction Listing**").

22.     Prime Alliance was informed about the Auction Listing by the company Prime Alliance had engaged to remarket the Prime Alliance Equipment because the Auction Listing appeared to contain pictures of *all* of the Equipment, including the Prime Alliance Equipment, and not just the LII Equipment.

**Prime Alliance Warns Eagle Eye Not To Take The Prime Alliance Equipment**

23.     On or around September 20, 2019, counsel for Prime Alliance contacted Eagle Eye to confirm that Eagle Eye was aware that the Prime Alliance Equipment was not part of the Auction Listing.

24.     During the September 20, 2019 call, Prime Alliance counsel spoke to an employee of Eagle Eye named Eric and counsel explained to Eric the situation and clarified that the Prime Alliance Equipment was not part of the Auction Listing, but that only the LII Equipment was for sale as part of the Auction Listing.

25.     In addition, on September 26, Prime Alliance's counsel sent to Tye Giles and Angelo Ikeda, part of the management of Eagle Eye, a cease and desist letter, explaining that LII had assigned to Prime Alliance the Prime Alliance Equipment and that Prime Alliance held a first position security interest in the Prime Alliance Equipment (the "**Cease and Desist Letter**"). A copy of the Cease and Desist Letter is attached as **Exhibit 5** and incorporated herein by this reference.

26.     The Cease and Desist Letter contained a copy of the Assignment as well as the UCC Amendment ending 7793.

27.     On October 10, 2019, counsel for Prime Alliance participated in a conference call with Ritchie Brothers (the company that manages ironplanet.com) and LII to discuss the Cease and Desist Letter and the bill of sale issued to Eagle Eye.

28.     Both LII and Iron Planet represented to Prime Alliance that the only equipment included on the bill of sale to Eagle Eye was the LII Equipment and that Eagle Eye had been made aware of that fact by both LII and Iron Planet before the sale of the LII Equipment was closed.

29.     As a result of the representations that the bill of sale to Eagle Eye did not include the Prime Alliance Equipment, coupled with the Cease and Desist Letter sent to Eagle Eye, Prime Alliance left the Prime Alliance Equipment in place and continued to attempt to market the Prime Alliance Equipment.

30.     Towards the end of July 2020, counsel for Prime Alliance reached out to Exeter Engineering ("**Exeter**"), the company who had built the Equipment, to see if Prime Alliance could engage Exeter to perform an inspection of the Prime Alliance Equipment.

31.     In response, Exeter informed Prime Alliance that it could not inspect the Prime Alliance Equipment because the Prime Alliance Equipment had been removed by Eagle Eye.

32.     Prime Alliance never authorized Eagle Eye to remove the Prime Alliance Equipment and in fact, Prime Alliance had expressly forbidden Eagle Eye from removing, disassembling, altering, dismantling, or interfering in any anyway with the Prime Alliance Equipment.

33.     Prime Alliance never released its first position security interest in the Prime Alliance Equipment and still maintains its first position security interest in the Prime Alliance Equipment despite Eagle Eye stealing from Prime Alliance the Prime Alliance Equipment.

### FIRST CLAIM FOR RELIEF
### (Conversion)
### (Prime Alliance Against All Defendants)

34.     Prime Alliance realleges and incorporates by reference the allegations of all preceding paragraphs.

35.     Prime Alliance is the legal holder of a first position security interest in the Prime Alliance Equipment.  As a result, and based on QFF's breach of the Lease, Prime Alliance is entitled to exercise its secured creditor rights.

36.     Prime Alliance's first position security rights grant Prime Alliance the right to possess, use and enjoy the Prime Alliance Equipment, superior to all other parties.

37.     Defendants have interfered with Prime Alliance's possession of the Prime Alliance Equipment, by, *inter alia*, illegally removing the Prime Alliance Equipment without valid authorization and in direct violation of the Cease and Desist Letter.

38.     Defendants' interference was intentional, willful and was done without lawful justification.

39.     The actions taken by Defendants have damaged Prime Alliance and deprived Prime Alliance of the use, possession, and enjoyment of the Prime Alliance Equipment.

40.     Defendants' removal and exercise of dominion and control over Prime Alliance's Equipment is inconsistent with Prime Alliance's rights.

## SECOND CLAIM FOR RELIEF
### (Declaratory Relief)
### (Prime Alliance Against All Defendants)

41.     Prime Alliance realleges and incorporates by reference the allegations of all preceding paragraphs.

42.     Prime Alliance asserts it holds a first position security interest in the Prime Alliance Equipment as more particularly evidenced by the UCC Amendments.

43.     Prime Alliance asserts that Defendants have taken the Prime Alliance Equipment and that Defendants are exercising unlawful possession and control over the Prime Alliance Equipment.

44.     Prime Alliance asserts that there is no valid agreement, basis, or law under which Defendants are entitled to the possession, use, or control of the Prime Alliance Equipment.

45.     There is an actual and genuine dispute between Prime Alliance and Defendants as to whether Defendants had any legal authority to possess the Prime Alliance Equipment.

46.     Prime Alliance seeks a declaratory judgment that: (1) Prime Alliance continues to hold a valid first position security interest in the Prime Alliance Equipment; (2) Defendants did not have valid, legal authority to take possession of the Prime Alliance Equipment or remove the Prime Alliance Equipment without Prime Alliance's direct authorization; (3) Defendants continue to hold the Prime Alliance Equipment in violation of applicable law; (4) Defendants are directly liable to Prime Alliance for all damages caused to the Prime Alliance Equipment as a result of Eagle Eye's actions; and (5) that there is no valid agreement, basis, or law which would entitle Defendants to the possession, use and control of the Prime Alliance Equipment.

47.     Prime Alliance is entitled to such other relief, declaratory or otherwise, as deemed necessary and appropriate.

### THIRD CLAIM FOR RELIEF
### (Unjust Enrichment)
### (Prime Alliance Against All Defendants)

48.     Prime Alliance realleges and incorporates by reference the allegations of all preceding paragraphs.

49.     Through their wrongful acts, Defendants received property that belongs to Prime Alliance, not to them.  This constitutes an unjust enrichment, for which Prime Alliance is entitled to compensation in an amount in excess of the jurisdictional minimum of this Court.

WHEREFORE, Plaintiff Prime Alliance prays for an award against Defendants as follows:

### On the First Claim for Relief

1.     For damages according to proof;

2.     Alternatively, for damages and repossession of the converted property upon

election of remedies at trial by Prime Alliance;

    3.    Compensation for the time and money expended in pursuit of the converted property;

    4.    For punitive and exemplary damages;

### On the Second Claim for Relief

    1.    For a judicial determination declaring that (1) Prime Alliance holds a valid first position security interest in the Prime Alliance Equipment; (2) Defendants did not have valid, legal authority to take possession of the Prime Alliance Equipment or remove the Prime Alliance Equipment without Prime Alliance's direct authorization; (3) Defendants continue to hold the Prime Alliance Equipment in violation of applicable law; (4) Defendants are directly liable to Prime Alliance for all damages caused to the Prime Alliance Equipment as a result of Eagle Eye's actions; and (5) that there is no valid agreement, basis, or law which would entitle Defendants to the possession, use and control of the Prime Alliance Equipment;

### On the Third Claim for Relief

    1.    For damages according to proof;

    2.    Restitution of Defendants' unjust enrichment;

### On All Claims for Relief

    1.    All costs of suit incurred herein;

    2.    Pre-judgment interest at the maximum legal rate as may be provided by law;

    3.    For such other and further relief as the Court may deem to be just and proper.

Dated: October 5, 2020

NOLAN HEIMANN, LLP

By: _____
Jordan Susman
Attorneys for Plaintiff
Prime Alliance Bank, Inc.